UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MATTHEW WILCH, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| THE LANDSCAPE GROUP, INC., and FRANK C. SCHAFFER, SR., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## <u>COMPLAINT- CLASS ACTION</u>

COMES NOW the Plaintiff Matthew Wilch ("Wilch" or "Plaintiff"), by and through undersigned counsel, and files this Complaint showing the Court as follows:

1.

Plaintiff brings this lawsuit on behalf of himself, and on behalf of all those similarly situated, against corporate defendant The Landscape Group, Inc. ("TLG" or "Defendant") and individual defendant Frank C. Schaffer, Sr. ("Schaffer" or "Defendant") (collectively "Defendants"), to recover overtime pay, liquidated damages, prejudgment interest, costs, and attorney's fees under the Fair Labor

1

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  Plaintiff files herewith as Exhibit 1 his "Consent" to join this collective action under 29 U.S.C. § 216(b).

2.

Defendants willfully violated the FLSA by failing to pay Plaintiff and those similarly situated for all overtime hours worked at a rate of time and one-half the required regular rate -- inclusive of all compensation not excludable from the regular rate calculation under applicable law -- for all hours worked above 40 in a work week, and failing to pay Plaintiff and the Similarly Situated Individuals all overtime compensation owed on a timely basis.

3.

Plaintiff also brings this action individually and on behalf of all persons performing work for Defendants under the job title of "supervisor" and/or a "laborer", or any other position performing substantially similar job duties under a different job title (hereinafter the "Class Members" or the "Class"), who received a 1099-MISC from TLG rather than Forms W-2 with regard to their earnings at any time during the six years prior to the date of the filing of this Complaint to recover damages, costs, and attorney's fees pursuant to 26 U.S.C. §7434(a).  This claim is brought as a class pursuant to Fed. R. Civ. P. 23(b)(3).

## **Parties**

4.

Plaintiff is an adult individual and a resident of Georgia who resides in this judicial district and who worked for Defendants under the job titles of either "supervisor" and "laborer" beginning in or about March, 2015 and continuing through on or about December 7, 2015 (Plaintiff's "relevant period").

5.

Plaintiff brings this action on behalf of himself and all other similarly situated individuals who work or worked for TLG as a "supervisor" and/or a "laborer", or any other position performing substantially similar job duties under a different job title, at any time within the three years prior to the filing of the Complaint and who were internally classified by TLG as independent contractors rather than W-2 employees (collectively the "Similarly Situated Individuals").

6.

According to its website, www.thelandscapegroupinc.com, Defendant TLG is company that provides various landscaping services.

7.

As reflected in the corporate filings contained on the Georgia Secretary of State's website, TLG is a Georgia for-profit corporation and may be served with process through its registered agent Frank C. Schaffer, Sr., at 1041 Hidden Hollow Drive, Marietta, Georgia 30068, located within this judicial district.

8.

Schaffer is a Georgia resident subject to service at his physical address, located at 1041 Hidden Hollow Drive, Marietta, Georgia 30068, located within this judicial district, or at TLG's principle place of business, located at 13120 Arnold Mill Rd., Roswell, Georgia 30075, also located within this judicial district.

## **Jurisdiction and Venue**

9.

This Court has original jurisdiction of this action:

    (a) under the FLSA, pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b); and

    (b) for fraudulent returns pursuant to 28 U.S.C. § 1331 and 26 U.S.C. §7434.

4

10.

Plaintiff, the Similarly Situated Individuals, and the Class Members are or were employed by Defendants in this judicial district, Defendants do business in this judicial district, and venue is therefore proper in this Court.

11.

Plaintiff and the Similarly Situated Individuals were "employees" of TLG as defined by the FLSA and were entitled to the protections of the FLSA pursuant to 29 U.S.C. §§ 203(e) & 207(a).

12.

TLG was at all times during the relevant period a provider of landscaping services including both installation and maintenance services and was at all times during the relevant period and thereafter an employer or enterprise engaged in commerce and therefore subject to the FLSA under 29 U.S.C. § 203(b) & (d).

13.

TLG, at all times during the relevant period in this Complaint and thereafter, was an enterprise engaged in commerce for purposes of the FLSA, having employees handling or otherwise working on goods or materials that have been

moved in or produced for commerce these included Stihl leaf blowers manufactured outside of Georgia, and Exmark mowers, manufactured in Beatrice, Nebraska.

14.

TLG also had annual gross revenues in excess of $500,000.

15.

TLG has employees handling or otherwise working on goods or materials that have been moved in or produced for interstate commerce by, for example, having their employees, including Plaintiff, use mowers, hedge-trimmers, leaf blowers, and hand tools such as shovels, rakes, and pruners. The tools Plaintiff and the Similarly Situated Individuals handled to perform their work for TLG were moved through interstate commerce.

16.

At all times throughout the relevant period, Defendant Schaffer owned and operated TLG and was a day-to-day manager with the power to hire and fire employees and direct their work.

17.

As reflected in the corporate filings contained on the Georgia Secretary of State's website, Schaffer serves as TLG's Chief Financial Officer and Secretary.

6

18.

At all times throughout the relevant period in the Complaint and thereafter, Defendant Schaffer was responsible for classification of Plaintiff and the Similarly Situated Individuals as independent contractors, rather than as a W-2 employees, and for payment to Plaintiff and the Similarly Situated Individuals for hours worked, and was a corporate officer with operational control of TLG's covered enterprise, and may therefore be held liable in an individual capacity as an "employer," as defined by the FLSA, for the failure to pay overtime compensation to Plaintiff and the Similarly Situated Individuals in violation of § 207 of the FLSA.

## Facts Related To All Counts

19.

Defendants paid Plaintiff and others similarly situated by what they referred to as a "day rate" which paid a set amount for a full day of work.

20.

Defendant Schaffer was responsible for setting Plaintiff's and the Similarly Situated Individuals' rate of pay and determining the working conditions at TLG.

21.

At all times during the relevant period, TLG internally classified its "supervisors" and "laborers," or those performing the same or similar work under different titles, as "independent contractors," rather than as employees.

22.

Upon information and belief, the action above was taken knowingly and to avoid the employer's share of payroll taxes and the employer's obligations under federal employment statutes, including the FLSA.

23.

At all times while employed by TLG, Plaintiff and the Similarly Situated Individuals work or worked for TLG on a full-time and continuing basis.

24.

At all times during the relevant period, TLG hired and paid Plaintiff and the Similarly Situated Individuals, provided their tools and equipment, assigned Plaintiff a work vehicle to drive, and directed them on how to perform their job duties.

25.

At all times during the relevant period, Defendant Schaffer was responsible for signing and issuing pay checks to Plaintiff and the Similarly Situated Individuals.

26.

Plaintiff and the Similarly Situated Individuals were assigned a set Monday through Friday work schedule with some Saturday work.

27.

At all times during the relevant period, Defendants dictated when Plaintiff and the Similarly Situated Individuals were to begin their shifts and under which circumstances their shifts were to end.   By way of non-exhaustive example, Defendants required Plaintiff to report to the shop at a set time, and they required him to work until all of the day's jobs were completed.

28.

Plaintiff's direct supervisor, Oscar Romero, specifically told Plaintiff and the Similarly Situated Individuals that they should not return to the shop before 4:00 pm, as that would indicate that they were not performing "quality work."

29.

At all times during the relevant period, Defendants required Plaintiff and the Similarly Situated Individuals to report to its shop to retrieve and/or load equipment and products they were to use for that day's landscaping jobs.

30.

At all times during the relevant period, Plaintiff and the Similarly Situated Individuals received schedules and work orders or "route sheets" from Defendants that instructed them as to which businesses and/or residences they will be working at that day and what services they will be providing at these businesses and/or residences.

31.

At all times during the relevant period, Defendants informed the "supervisors" and "laborers" as to the order in which they were perform work on the businesses and/or residences and as to time period in which the jobs described in the work order must be performed.

32.

At all times during the relevant period, Defendants provided its "supervisors" and "laborers" with a shirt, a jacket, and a hat with the company logo and required them to wear one or more of these items when performing landscaping services for TLG.

33.

At all times during the relevant period, Defendants provided Plaintiff and the Similarly Situated Individuals with a company truck to perform their landscaping duties, and Defendants paid the taxes, registration, and insurance premiums on the trucks and supplied the fuel.

34.

At all times during the relevant period, Defendants provided Plaintiff and other "supervisors" with a company credit card for gas purchases and required that they return the credit card to the company after purchasing gas for the company truck.

35.

At all times during the relevant period, Plaintiff and the Similarly Situated Individuals were subject to the direction and control of Defendants with regard to the manner and means of their job performance.  By way of non-exhaustive example, Plaintiff's supervisor, Oscar Romero, gave Plaintiff and his crew instructions on how each job was to be performed.

36.

At all times during the relevant period, Defendants did not require Plaintiff and the Similarly Situated Individuals to possess specialized knowledge before beginning their employment with TLG as "supervisors" or "laborers".

37.

Plaintiff and the Similarly Situated Individuals work schedule was so controlled by Defendants that they were required by Defendants to sign a document stating that they could be suspended or taken off assignments in the event there were issues with tardiness.

38.

Defendants used Saturday work as a reward and denied Saturday work to individuals when Defendants thought they had unsatisfactory work performance.  If Plaintiff and the Similarly Situated Individuals wanted time off from work at TLG, they were required to request this time off in advance and with a full explanation as to why they needed the day(s) off.

39.

Defendants suffered or permitted Plaintiffs to work over forty hours in a workweek on multiple occasions during the relevant periods, but did not pay

Plaintiff and the Similarly Situated Individuals at time and a half their applicable regular rates as defined by the FLSA for all hours worked over forty in a work week as required by the FLSA.

<div align="center">40.</div>

At no time did Plaintiff and others similarly situated receive compensation for hours worked above 40 in a work week as mandated by the FLSA.  *See* 29 U.S.C. § 207(e) ("regular rate").

<div align="center">41.</div>

The day rate was not paid where only 4.5 hours were worked, and instead only half the day rate was paid. For example, if Plaintiff and the Similarly Situated Individuals were not able to perform work past 1:00 pm due to weather conditions, Defendants only paid Plaintiff and the Similarly Situated Individuals half of their "day rate."  Thus, when Plaintiff and the Similarly Situated Individuals were unable to perform their landscaping duties after 1:00 pm due to rain, Plaintiff was not paid his "day rate," rather, he was paid only half of his applicable "day rate" for that day.

<div align="center">42.</div>

Plaintiff and the Similarly Situated Individuals were paid on a biweekly basis.

<div align="center">13</div>

42.

Plaintiff and the Similarly Situated Individuals were scheduled to receive their compensation for the first week of the biweekly pay period on a Friday, and compensation for the second week of the biweekly pay period was scheduled to be paid on the following Monday, three days after the close of the pay period.

43.

On more than one occasion, Defendants failed to pay Plaintiff and the Similarly Situated Individuals their second week's compensation for the biweekly pay period on the designated payday.

44.

The first time Defendants failed to remit timely payment to Plaintiff and the Similarly Situated Individuals during Plaintiff's relevant period, Defendants informed them by letter in advance that they would not receive a check for the second week of the biweekly pay period on the designated day. Plaintiff and the Similarly Situated Individuals were required to sign the letter and return it to Defendants acknowledging this fact.

45.

During Plaintiff's relevant period, Defendants failed to inform Plaintiff and the Similarly Situated Individuals in advance regarding all future late payment of earnings.

46.

After the first late payment of earnings during Plaintiff's relevant period, Plaintiff complained each time he was not paid in accordance with the established paydays.

47.

On or about December 7, 2015, for the first time, Plaintiff went directly to Defendant Schaffer's office and again complained about not being paid on time and in accordance with the company's established paydays.

48.

That same day, on or about December 7, 2015, Plaintiff received a text message from Oscar Romero informing Plaintiff that Defendant Schaffer has decided to terminate Plaintiff.

49.

December 7, 2015, was a Monday on which Plaintiff and the Similarly Situated Individuals should have been paid in accordance with the company's established paydays.  Plaintiff and the Similarly Situated Individuals were not paid on that Monday, December 7, 2015, but instead were paid several days later.

50.

Defendants knew or should have known that Plaintiff and the Similarly Situated Individuals were covered by the maximum hour and overtime payment requirements of the FLSA.

51.

Defendants' failure to pay Plaintiff and the Similarly Situated Individuals the overtime compensation required by the FLSA was willful as indicated by their efforts to hide the employment relationship through the use of a claimed independent contractor relationship.

52.

Upon information and belief, Defendants have failed to keep records of Plaintiffs' hours worked and other records required by 29 U.S.C. § 211(c) regarding

the wages, hours, and other conditions of employment of Plaintiffs for the time period required by law.

## COUNT ONE: INDIVIDUAL ACTION

## FAIR LABOR STANDARDS ACT—OVERTIME

### 53.

All previous paragraphs are incorporated as though fully set forth herein.

### 54.

Plaintiff is an employee entitled to the overtime compensation required by the FLSA throughout his work for TLG during his relevant period.

### 55.

On numerous occasions during the relevant period, Defendants suffered or permitted Plaintiff to work more than 40 hours in a work week without receiving overtime compensation at time-and-a-half his properly calculated regular rate for hours worked over 40 under the FLSA -- i.e., their regular rate inclusive of his base rate for non-overtime hours and all other compensation not otherwise excludable under 29 U.S.C. § 207(e) ("regular rate").

56.

As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times the required regular rate of pay for work performed in excess of forty hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

57.

Plaintiff is entitled to a judgment awarding recovery of his back overtime pay at the rate of one and a half times his applicable regular rate, in addition to an equivalent amount as liquidated damages, or prejudgment interest if liquidated damages are not awarded in full, attorney's fees, and costs pursuant to 28 U.S.C. § 216(b).

## <u>COUNT TWO: RETALIATION</u>

### FAIR LABOR STANDARDS ACT—RETALIATION

58.

All previous paragraphs are incorporated as though fully set forth herein.

59.

By complaining to Defendants that he was not being timely paid his earnings, Plaintiff was engaged in protected activity under the FLSA.

18

60.

After engaging in the protected activity, Plaintiff suffered an adverse employment action when Defendants terminated his employment.

61.

Defendants terminated Plaintiff's employment because he engaged in the protected activity of complaining to Defendants that he was not being timely paid his earnings.

62.

Plaintiff is entitled to recover from the Defendants his back wages, in addition to an equivalent amount as liquidated damages, prejudgment interest, attorney's fees, and costs pursuant to 28 U.S.C. § 216(b).

## COUNT THREE: COLLECTIVE ACTION

## FAIR LABOR STANDARDS ACT—OVERTIME

63.

All previous paragraphs are incorporated as though fully set forth herein.

64.

Plaintiff and the Similarly Situated Individuals were employees entitled to the overtime compensation required by the FLSA throughout their work for Defendants during the relevant period.

65.

On numerous occasions during the relevant period, Defendants suffered or permitted Plaintiff and the Similarly Situated Individuals to work more than 40 hours in a work week without receiving overtime compensation at time-and-a-half their properly calculated regular rate for hours worked over 40 under the FLSA -- i.e., their regular rate inclusive of their base rate for non-overtime hours and all other compensation (including bonuses) not otherwise excludable under 29 U.S.C. § 207(e) ("regular rate").

66.

As a result of Defendants' failure to compensate Plaintiff and the Similarly Situated Individuals at a rate not less than one and one-half times the required regular rate of pay for work performed in excess of forty hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

67.

Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

68.

Plaintiff and the Similarly Situated Individuals are entitled to a judgment awarding recovery of their back overtime pay at the rate of one and a half times their applicable regular rate, in addition to an equivalent amount as liquidated damages, prejudgment interest, attorney's fees, and costs pursuant to 28 U.S.C. § 216(b).

## COUNT FOUR: CLASS ACTION

## 26 U.S.C. § 7434(a)—FRAUDULENT RETURN

69.

All previous paragraphs are incorporated as though fully set forth herein.

70.

The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, these similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Upon information and belief, there are at least 20 members of the Class.

71.

There are questions of law and fact common to the members of the Class that predominate over any questions solely affecting the individual members of the Class.

72.

Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has the same interests in this matter as all other members of the Class.

73.

Plaintiff is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

74.

Class certification of the claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

75.

Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

76.

This count sets forth a claim for damages by Plaintiff and the other members of the Class for Defendants' willful filing of fraudulent information returns in violation of 26 U.S.C. §7434.

77.

With respect to the labor of Plaintiff and the other class members, TLG willfully filed fraudulent Forms 1099-MISC throughout the period these individuals were employed with TLG. TLG knew that Plaintiff and the other class members were employees of TLG, rather than independent contractors, for purposes of applicable tax laws under Section 530(e)(3) of the Revenue Act of 1978. Nonetheless, TLG filed Forms 1099-MISC rather than Forms W-2 with regard to the earnings of Plaintiff and the other class members. TLG's fraudulent filings were part of a scheme to limit its liability for taxes under the Federal Insurance and Contributions Act, 26 U.S.C. §3101, et seq., and the Federal Unemployment Tax Act, 26 U.S.C. §§3301, et seq., as well as to reduce TLG's worker's compensation premiums. TLG filed the Forms 1099-MISC knowing and intending that these fraudulent filings would deprive Plaintiff and the Class Members and unemployment compensation benefits to which they were entitled.

78.

As a result of TLG's fraudulent filing of Forms 1099-MISC, Plaintiff and

the other Class Members have suffered damages, including the denial of Social

Security earnings credits, unemployment compensation benefits, and are entitled to

those damages, including attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against

Defendants and in favor of Plaintiff and the Similarly Situated Individuals and the

Class Members finding a violation of the FLSA and 26 U.S.C. § 7434(a), and

awarding the following relief:

1.      Order Defendants to pay Plaintiff and the Similarly Situated Individuals

their unpaid back overtime pay at time-and-a-half their applicable rate for all hours

worked over 40 in a work week during the relevant period, and an equivalent amount

as liquidated damages (or prejudgment interest if liquidated damages are not

awarded in full);

2.      Order Defendants to pay Plaintiff back wages at the applicable regular

rate, and an equivalent amount as liquidated damages (or prejudgment interest if

liquidated damages are not awarded in full) for Defendants' retaliatory conduct in violation of the FLSA;

3.      Order Defendants to pay Plaintiff and the Class Members each the greater of $5,000 or the sum of the actual damages sustained by Plaintiff and the Class Members as a result of the filing of the fraudulent tax return;

4.      Order Defendants to pay Plaintiff, the Similarly Situated Individuals, and the Class Members the amount of their costs and attorney's fees; and

5.      Grant such further other and further relief as the Court finds just and proper in this action.

PLAINTIFF DEMANDS A TRIAL BY A JURY OF TWELVE PERSONS.

Respectfully submitted this 13th day of June, 2016.

<div style="margin-left:40%">

*s/ Jerilyn E. Gardner*
C. Andrew Head
Georgia Bar No. 341472
Jerilyn E. Gardner
Georgia Bar No. 139779
Head Law Firm, LLC
1170 Howell Mill Rd, NW, Suite 305
Atlanta, Georgia 30318
Tel: (404) 924-4151
Fax: (404) 796-7338
Email: ahead@headlawfirm.com

</div>

25

jgardner@headlawfirm.com

Dawson Morton
Georgia Bar No. 525985
Dawson Morton, LLC
104 Cambridge Ave
Decatur, GA 30030
Phone: (404) 590-1295
Fax: (404) 377-7637
Email:dawson@dawsonmorton.com

*Attorneys for Plaintiff*